**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LORETTA PARRISH,**

        **Plaintiff,**

-vs-                                                              **Case No. 6:06-cv-34-Orl-31KRS**

**GUARANTY NATIONAL INSURANCE**
**COMPANY, COLONIAL INSURANCE**
**AGENCY, INC. and UNITED AMERICAN**
**BANK OF CENTRAL FLORIDA,**

        **Defendants.**

## ORDER

      Plaintiff, Loretta Parrish (Parrish) owned a piece of commercial real estate in Orange County, Florida that was encumbered by a mortgage on behalf of United American Bank of Central Florida, n/k/a Colonial Bank, N.A. ("Colonia Bank"). The original principal amount of the note secured by the mortgage was $430,000. Paragraph 3 of the mortgage and security agreement (Doc. 2 at 12-23) required Parrish to keep the property adequately insured against perils and hazards in an amount up to the principal amount of the note.

      In May 2004, Plaintiff apparently suffered financial difficulties and was unable to continue the insurance covering her property. Accordingly, Colonial Bank advised Plaintiff that it would "take care of" procuring a replacement policy of insurance.[1] Thereafter, Colonial Bank, through its agent, Colonial Insurance Agency, Inc., obtained coverage from Guaranty National Insurance

---

[1] This is commonly referred to as "force-placed" coverage.

Company ("Guaranty National"). Parrish received confirmation of this in the form of a declarations page and certificate of insurance (Doc. 2 at 36-40).[2] This document reflected Parrish as the named "insured mortgagor," policy limits of $425,000 and an annual premium of $10,497.50.

On August 13, 2004, Hurricane Charley struck Central Florida, causing significant damage to Parrish's property. Parrish informed Colonial Bank of the damage and Guaranty National adjusted the loss, which Parrish contends exceeded $425,000. However, Guaranty National ultimately took the position that the policy limit was only $287,253.90, the balance due on the mortgage note at the time the insurance was force-placed.

In December 2005, Plaintiff sued Colonial, its agent, and Guaranty National for damages suffered due to the shortfall in the insurance coverage. Plaintiff asserts two claims against Colonial Bank – breach of contract (Count II) and negligence (Count IV). Colonial Bank has moved to dismiss the Complaint (Doc. 5), and Plaintiff has responded (Doc. 16).

*Breach of Contract*

Parrish contends that Colonial Bank was contractually obligated to procure insurance coverage in an amount equal to the original principal amount of the note ($430,000), even though the bank's secured interest in the property was only $287,253.94 at the time the insurance was force-placed.

The contract dispute is governed by Paragraph 3 of the mortgage and security agreement. (Doc. 2 at 15). That paragraph obligates the mortgagor (Parrish) to "keep the buildings now or

---

[2] Although this document reflects an effective date of July 1, 2004, it was not issued until August 25, 2004.

hereafter on said land insured against casualty loss arising from all perils and hazards . . . up to the principal amount of the note." (Doc. 2 at 15). That paragraph further provides that "in the event the Mortgagor shall for any reason fail to keep the said premises so insured . . . the Mortagee may place and pay for such insurance or any part thereof." (Doc. 2 at 15).

Thus, it is clear that the <u>obligation</u> to provide insurance coverage falls upon the <u>mortgagor</u>, Parrish. In the event the mortgagor defaults in this regard, the mortgagee is given the right, but not the obligation, to force-place "<u>such insurance or any part thereof</u>." (Doc. 2 at 15) (emphasis added). Plaintiff argues that the term "such insurance" in Paragraph 3 refers to the obligation to insure "up to the principal amount of the note," while the qualifying phrase "or any part thereof" limits only the obligation to pay for the insurance, rather than the obligation to place it. In other words, Parrish contends that the bank, if it chooses to force-place coverage, must force-place full coverage, but need only pay for part thereof.[3]

The tortuous construction urged by Plaintiff simply makes no sense. Whatever coverage the bank purchases – full or partial – will ultimately become the Plaintiff's financial responsibility.[4] It is nonsense to suggest that the bank must buy insurance that it does not need and which the Plaintiff cannot afford. The contract is unambiguous and makes clear the intent of the parties. In exercising its option to force-place insurance, the bank is protecting its own secured

---

[3] Stated in yet another way, Parrish wants to read the contractual phrase "the Mortgagee may place and pay for such insurance or any part thereof" as though it were instead "the Mortgagee may place such insurance and pay for any part thereof".

[4] Plaintiff's failure to pay insurance premiums is an event of default under Paragraph 10A of the mortgage. Paragraph 3 also obligates the mortgagor to repay all premiums for force-placed insurance with interest.

interest in the property, not the Plaintiff's equity.[5]  The bank has no contractual obligation to protect the interest of the mortgagor resulting from her own decision to allow full coverage to lapse.  Accordingly, Plaintiff's breach of contract claim must fail.

*Negligence*

In Count IV of the Complaint, Plaintiff alleges that Colonial Bank had a duty to "obtain appropriate insurance coverage for Parrish's interest in the office building."  (Doc. 2, Paragraph 44).  Plaintiff claims that this obligation arises by reason of a fiduciary duty owed to her by Colonial Bank.  The only basis Parrish offers for the existence of such a duty is the mortgage and security agreement. As a consequence of the breach of this duty, Plaintiff claims the same compensatory damages as those claimed in connection with the alleged breach of contract.

The relationship between these parties, and the duties and responsibilities of each, are governed by the mortgage and security agreement.  As noted above, Paragraph 3 of that contract makes it clear that force-placed insurance coverage is an option available to the bank, not an obligation.[6]  Plaintiff cannot avoid the clear provisions of the contract by the subterfuge of a tort claim.  Among other reasons, such subterfuge is barred by Florida's economic loss rule.  *See*, *e.g.*,

---

[5]The Declaration sent to Plaintiff by Guaranty states, in pertinent part, "This certificate of insurance is issued in order to protect the interest of the lender. In certain circumstances your interest may be protected."

[6]To the extent that Plaintiff seeks to supplement the lending documents by virtue of an alleged (Doc. 1 at Paragraph 44) assurance by Colonial Bank to "take care of" insurance needs, any such claim is barred by the express language of Paragraph 12 of the mortgage modification attached to the Complaint as Exhibits B and C, which provides that the mortgage "cannot be amended, supplemented or changed orally, but only by an agreement in writing which makes specific reference to this Agreement and which is signed by the party against whom enforcement or any such amendment, supplement or modification is sought." (Doc. 2 at 26, 32).

*Indemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004). Accordingly, Plaintiff's negligence claim is not well-founded.

Although Parrish has generally alleged the existence of a fiduciary relationship between herself and Colonial, her complaint fails to describe any circumstances, aside from the mortgage and security agreement, that might have led to the creation of any such relationship. But it is at least possible that Colonial engaged in conduct that led to it assuming an extra-contractual fiduciary duty, whose subsequent breach might support an independent tort claim. Therefore, if she so desires, Parrish may replead Count IV to provide a sufficient basis for the creation of a fiduciary relationship between herself and Colonial.

It is, therefore

**ORDERED** that Colonial Bank's Motion to Dismiss (Doc 5) is GRANTED. Count II is DISMISSED WITH PREJUDICE. Count IV is DISMISSED WITHOUT PREJUDICE, with leave to amend not more than 20 days from the entry of this order. The Court reserves jurisdiction to assess fees and costs against Plaintiff in accordance with paragraph 27 of the mortgage.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 3, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party